JENNIFER M. CARTLEDGE *vs.* MARK E. EVANS.

No. 05-P-1300.

Suffolk. October 12, 2005. - October 19, 2006.

Present: LAURENCE, ARMSTRONG, & TRAINOR, JJ.

*Divorce and Separation,* Child custody. *Parent and Child,* Custody. *Minor,* Custody.

A single justice of this court did not abuse her discretion in staying a Probate and Family Court order pending appeal, where the balance of the hardship cut in favor of staying the order. [578-579]

A probate judge erred in denying a mother's petition to remove her child to Connecticut, where the mother, whose marriage to a Massachusetts resident had dissolved, had a "good reason" for the move, in that she had lost her job but had located a new position in Connecticut near family who would provide child-care assistance; moreover, the judge unduly gave dispositive weight to the disruption in visitation with the father, despite the mother's willingness to try visitation alternatives, and the judge's findings failed to support her conclusion that the best interests of the child were served by the denial of the removal petition. [579-581] TRAINOR, J., dissenting.

COMPLAINT for divorce filed in the Suffolk Division of the Probate and Family Court Department on February 5, 2003.

A complaint for authorization to remove a child from the Commonwealth, filed on January 10, 2005, was heard by *E. Chouteau Merrill,* J., and a motion seeking an order staying judgment pending appeal was heard in the Appeals Court by *Cohen,* J.

*Ann Wagner (Monroe L. Inker* with her) for Jennifer M. Cartledge.

*Janice Bassil (Michael J. Traft* with her) for Mark E. Evans.

ARMSTRONG, J. These are cross appeals, one from an order by a judge of the Probate and Family Court denying the plaintiff mother permission to move with the parties' then six year old child to Old Saybrook, Connecticut, and the other from an order by a single justice of this court staying the probate judge's order pending appeal.

The mother and the defendant father were married on June 7, 1997, in Boston. It was the first marriage for each. They have one child, born May 19, 1999. In February, 2003, both parties (the mother first) sought divorce on the ground of irretrievable breakdown of the marriage. After trial, an amended judgment of divorce entered in July, 2004, granting physical custody of the child to the mother, with the parties sharing legal custody. On January 7, 2005, the mother filed a complaint for modification, seeking an increase in child support based on the loss of her job with Fleet Bank in the aftermath of its takeover by Bank of America. Three days later, she filed a complaint to remove the child from Newton, where they were then living, to the residence of the mother's mother in Old Saybrook, Connecticut. The judge denied the removal request on August 30, 2005, and ordered the mother, who had already moved to Old Saybrook, to relocate to somewhere within twenty-five miles of Boston by September 2, 2005, and to enroll the child in a local school. The mother moved back, staying temporarily with a sister who lived in Boston, but found she could not enroll the child in a local public school until she acquired a permanent residence of her own.

The mother meanwhile appealed from the order denying removal and at the same time filed a motion, pursuant to Mass. R.A.P. 6(a), as amended, 378 Mass. 930 (1974), seeking an order staying the probate judge's order pending appeal. A single justice of this court issued such an order, from which the father filed a notice of appeal. The single justice also accelerated proceedings on the two appeals in an effort to minimize prejudice flowing from the stay.

*The single justice's order.* There can be no question that the order of September 14, 2005, staying the order commanding return pendente lite, lay within the discretion of the single justice under Mass.R.A.P. 6(a). See *Mezoff* v. *Cudnohufsky,* 5 Mass. App. Ct. 874 (1977). A single justice's order staying a judgment pending appeal is rarely overturned. The mother and child had been living in Old Saybrook from midsummer on, and the child had been entered in a local parochial school that seemed to be the best fit for him. The probate judge's order gave the mother only three days to enroll the child in a new school, a

requirement the mother was unable to fulfil until she could obtain a permanent residence. Although by accelerating appellate proceedings, the single justice had hoped not to foreclose the possibility of the child's beginning school in the Boston area close to the start of the school year, in practical effect any order reversing the single justice order and affirming the probate judge's order could not have been implemented until late autumn at the earliest, well into the school year. The impact would have been in all likelihood far more disruptive if the single justice had declined to stay the probate judge's order, despite misgivings about its correctness, and that order had been reversed on appeal, with the effect that the mother and child would be uprooted twice.

The balance of hardship (see *Hilton* v. *Braunskill,* 481 U.S. 770, 776 [1987], interpreting the cognate Federal rule, Fed. R.A.P. 8 [1998]) cut in favor of staying the order; or, at least, the single justice could properly see it that way. As to the single justice's determination that the mother had demonstrated a likelihood of success on the merits of her appeal, no abuse of her discretion in that regard can be shown in light of our disposition of the underlying appeal. The order of the single justice must be affirmed.

*The probate judge's order.* As the mother here had physical custody of the child, we apply the "real advantage" test.[1] See *Yannas* v. *Frondistou-Yannas,* 395 Mass. 704 (1985); *Hale* v. *Hale,* 12 Mass. App. Ct. 812 (1981). "[T]he 'real advantage' test is grounded on the 'realization that after a divorce a child's subsequent relationship with both parents can never be the same as before the divorce . . . [and] that the child's quality of life and style of life are provided by the custodial parent.' . . . Although the best interests of the children always remain the paramount concern, '[b]ecause the best interests of a child are

---

[1]The guardian ad litem appointed in this matter explicitly (in his report to the court), and the probate judge implicitly (by her reference to and quotation from the relevant portion of the guardian's report), questions the continuing viability of the "real advantage" test. That test remains the appropriate standard in cases where the custodial parent seeks removal. See *Dickenson* v. *Cogswell,* 66 Mass. App. Ct. 442, 447-448 (2006). Compare *Mason* v. *Coleman,* 447 Mass. 177, 184-186 (2006) (articulating the standard for removal cases when the parties share physical custody).

so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires that the interests of the custodial parent be taken into account.' " *Yannas* v. *Frondistou-Yannas, supra* at 710, quoting from *Cooper* v. *Cooper*, 99 N.J. 42, 53-54 (1984).

The aspect of the judgment that most gives us pause is the judge's treatment of the factors bearing on the real advantage analysis, which is to say, the presence of a sincere reason for the move and the absence of a motive to deprive the father of reasonable visitation.[2] *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 266-267 (2001). On its face, the mother's case would seem to present a relatively straightforward application of real advantage principles: her marriage had dissolved; she had lost her three-day per week job with Fleet Bank that paid $70,000 plus bonuses; the house in which she and the child had lived in Newton was not available after July, 2005, on a month-to-month basis; and she could not afford to purchase a home in Newton that would enable the child to stay in the local school. The move to Old Saybrook offered her free lodging in an upscale community, the companionship of family, and readily available child-care assistance from family while she looked for and established herself in a suitable job. As of the time of trial, she had accepted a three-day per week job as a mortgage originator at a Sovereign Bank in Old Saybrook. These circumstances establish a "good reason" for the move to Connecticut, and the probate judge's determination to the contrary is clearly erroneous.[3] See *Rosenthal* v. *Maney, supra* at 267; *Dickenson* v. *Cogswell*, 66 Mass. App. Ct. 442, 448 & n.5 (2006).

---

[2] The judge did not gainsay the guardian's finding that the mother's motives were sincere, and that she was not motivated by a desire to make visitation with the father more difficult.

[3] The salient subsidiary findings of the judge find support in the record primarily in the report of the guardian ad litem, but they differ significantly from that notably dispassionate and balanced report in that they represent a distillation and amplification of the elements of the report negative to the mother and the removal. The judge's conclusion, moreover, shows less than full appreciation of the mother's genuine problem dealing with a failed marriage, loss of job, loss of house, and a young child to support. For purposes of this decision we accept the judge's subsidiary findings but draw our own conclusions from those findings. See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 265 (deference not accorded when findings do not support a judge's action).

We turn then to the probate judge's determination of the effects of the move on the father, mother, and child. See *Yannas* v. *Frondistou-Yannas, supra* at 711-712; *Rosenthal* v. *Maney, supra* at 267. Here, as in *Hale* v. *Hale,* 12 Mass. App. Ct. at 815, the findings and rulings concerning removal concentrated almost exclusively on the father's relationship with the child, and in particular the desirability of frequent, short visits with the father. While those findings cannot be considered erroneous, disruption in visitation with the noncustodial parent cannot be controlling or no removal petition would ever be allowed. It is clear from the probate judge's findings that undue — in effect, dispositive — weight was given to this criterion. See *Yannas* v. *Frondistou-Yannas, supra* at 711; *Hale* v. *Hale, supra* at 815. In addition, the mother was willing to try visitation alternatives, including extending the father's weekend and holiday visits.[4] The remaining findings, concerning disruptions to the child's social life and activities caused by the move, ignore the reality that a move, whether to another town in Massachusetts or to Old Saybrook, would be required whether or not the removal petition was allowed.

In these circumstances, a move to a town and neighborhood that are familiar to the child, where the mother and child have close family connections, and which are not so distant from Boston as to preclude frequent visitation with the father, offers an obviously reasonable alternative more in keeping with the principles implicit in the real advantage test. The probate judge's findings fail to support her conclusion that the best interests of the child are served by the denial of the removal petition.

The judgment denying the mother permission to remove the child is reversed, and the matter is remanded for the entry of a

See also *Adoption of Leland,* 65 Mass. App. Ct. 580, 585, 588-589 (2006). The dissenting opinion gives examples of conclusions we do not accept. Indeed, it is fair to say that there is no dispute in this case concerning the basic facts of the situation the parties find themselves in. The dispute, rather, turns on whether the judge gave fair consideration to all aspects of that situation, including the mother's needs, or improperly gave undue emphasis to only one aspect of the situation, the father's visitation.

[4]The mother also offered to drive the child halfway for a midweek visitation with the father at a restaurant to ameliorate disruption in the father's visitation. We tend to share the judge's skepticism as to the usefulness of this suggestion.

judgment approving the mother's application to remove the child. The order of the single justice of this court is affirmed.

*So ordered.*

TRAINOR, J. (dissenting). Notwithstanding my dissent, I agree with the majority that the order of the single justice was within her discretion under Mass.R.A.P. 6(a), as amended, 378 Mass. 930 (1974). I respectfully dissent, however, from the majority opinion insofar as it reverses the Probate and Family Court judge's order. Our standard of review is clear in these cases. We are bound by long-standing and appropriate guidelines that require " '[f]indings of fact . . . not be set aside unless clearly erroneous, and due regard . . . be given to the opportunity of the trial court to judge of the credibility of the witnesses.' We do not substitute our judgment of the evidence for the subsidiary findings of the judge absent clear error or a 'firm conviction that a mistake has been committed.' " *Mason* v. *Coleman*, 447 Mass. 177, 186 (2006) (citations omitted).

Here, the trial judge made thoughtful and comprehensive findings in denying the mother's complaint for authorization to remove her minor child from this jurisdiction. The judge specifically found that "[t]he most generous characterization of the Wife's reason for moving to Connecticut is 'because she wants to,' " and "[n]one of the recognized criteria for showing a real advantage are present, nor did the Wife succeed in proving even the allegations she made in her Complaint seeking the removal." The trial judge noted that the wife, as part of the divorce, attempted to amend the complaint to allow the removal of the child in the event she lost her job after the divorce became final. This motion was denied, and the trial judge subsequently observed that it was clear that the wife always intended to remove the child to Connecticut. The judge made the following findings: (1) "The Wife's claim that she is only able to find employment in Connecticut is not credible"; (2) "The Wife's claim that she has no support system in Massachusetts is not credible"; (3) "The Wife's claim that she cannot afford to stay in Massachusetts is not credible"; and finally (4) "A move of

115 miles from his father is not in [the child's] best interest." Each of these findings is throughly documented and analyzed, and is well supported by the record.

The trial judge specifically concluded that the wife's argument did not meet the real advantage standard as set out in *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 710-712 (1985). The trial judge concluded her analysis with the observation that "[i]n this case, because the Wife has not shown any advantage, other than her personal desire, [the child's] best interest must determine the outcome of the removal request. The move is not in [the child's] best interest." When we decide whether a judge has abused her discretion, "we do not simply substitute our judgment for that of the judge, rather, we ask whether the decision in question 'rest[s] on whimsy, caprice, or arbitrary or idiosyncratic notions.' This standard gives great deference to a judge's decision." *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999) (citation omitted). Here, the judge carefully explained her conclusions both for the benefit of the parties and to enable us to review her ruling. There was nothing in her analysis that was arbitrary or capricious. There was no error, and her judgment should have been affirmed.